## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## (EASTERN DIVISION)

| | | |
|---|---|---|
| **TRI-TAYLOR PARTNERS, LLC**, an Illinois limited liability company, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Case No.  1:25-cv-8840 |
| **CHICAGO TITLE INSURANCE COMPANY**, a Florida corporation, | ) ) ) | |
| Defendant. | ) ) | |

## COMPLAINT

Plaintiff Tri-Taylor Partners, LLC ("Tri-Taylor"), by its attorneys, files this Complaint against Defendant Chicago Title Insurance Company ("Chicago Title"). In support of its complaint, Plaintiff states as follows:

## INTRODUCTION

1.      This case arises from Defendant Chicago Title Insurance Company's failure to honor its contractual obligations under a title insurance policy it issued to Plaintiff Tri-Taylor Partners, LLC in connection with the purchase of a Chicago property. Unbeknownst to Plaintiff at the time of purchase, the property was subject to injunctions—matters that fall squarely within the coverage provisions of the title policy. These unresolved encumbrances have significantly diminished the value of the property and were found by another title insurance company when Plaintiff attempted to sell the property. Chicago Title has wrongfully denied coverage, breaching its contractual duties and leaving Plaintiff with substantial financial harm.

1

## THE PARTIES

2.     Plaintiff Tri-Taylor is an Illinois limited liability company. Plaintiff's principal office is 5047 Warren St., Skokie, IL 60077.

3.     Tri-Taylor has two members: Rizwan Arastu and Aamir Ukani, both of whom reside in Illinois.

4.     Defendant Chicago Title is a Florida corporation. Defendant's principal place of business is in Florida.

## JURISDICTION

5.      This Court has jurisdiction pursuant to 28 U.S.C. § 1332 because there is complete diversity of citizenship between the Plaintiff and the Defendant and the amount in controversy exceeds $75,000.

6.     Venue is proper because the dispute arose in the City of Chicago located within the Northern District of Illinois.

## BACKGROUND

7.     On December 6, 2016, Plaintiff purchased a property commonly known as 2406 W. Grenshaw St., Chicago, IL 60612 (the "Property") for $682,000.00.

8.     In connection with Plaintiff's purchase of the Property, Defendant issued Plaintiff an ALTA Owner's Policy of Title Insurance in the amount of $682,000.00 ("Title Policy"). A copy of the Title Policy is attached as **Exhibit A**.

9.     The Title Policy insured Plaintiff against "any defect in or lien or encumbrance on the Title."

10.     The Title Policy also insured Plaintiff against "unmarketable title" in the Property.

11.     The Title Policy also insured Plaintiff against "The violation or enforcement of any law, ordinance, permit, or governmental regulation (including those relating to building and zoning) restricting, regulating, prohibiting, or relating to (a) the occupancy, use, or enjoyment of the Land; (b) the character, dimensions, or location of any improvement erected on the Land…if a notice, describing any part of the Land, is recorded in the Public Records setting forth the violation or intention to enforce, but only to the extent of the violation or enforcement referred to in that notice."

12.     "Public Record" is defined in the Commitment for Title Insurance as "The recording or filing system established under State statutes in effect at the Commitment Date under which a document must be recorded or filed to impart constructive notice of matters relating to the Title to a purchaser for value without Knowledge. The term "Public Records" does not include any other recording or filing system, including any pertaining to environmental remediation or protection, planning, permitting, zoning, licensing, building, health, public safety, or national security matters."

*The Two Unresolved Injunctions.*

13.     On December 27, 1996, before Plaintiff purchased the Property, the City of Chicago (the "City") filed suit over various code violations at the Property. The suit was captioned *City of Chicago v. Valdes*, and denoted as Case No. 96M1406800 (the "First Suit"). A *lis pendens* for the First Suit was recorded on January 17, 1997, as Document No. 97038120.

14.     The *lis pendens* filed by the City with the Cook County Recorder of Deeds for the First Suit is attached as **Exhibit B**.

15.     On July 28, 2003, the City again filed suit over various code violations at the Property. The suit was captioned *City of Chicago vs. Maria Gonzalez, et al.*, and denoted as Case No. 20031403033 (the "Second Suit").

16.     The public case docket for the Second Suit is attached as **Exhibit C**.

17.     On November 21, 2003, the City filed another suit for code violations at the Property. The suit was captioned as *City of Chicago vs. Cosmopolitan Bank, et al.*, and denoted as Case No. 20031404558 (the "Third Suit"). A *lis pendens* for the Third Suit was recorded on December 12, 2003, as Document No. 0334601048.

18.     The public case docket for the Second Suit is attached as **Exhibit D**.

19.     The *lis pendens* filed by the City with the Cook County Recorder of Deeds for the Third Suit is attached as **Exhibit E**.

20.     The complaint filed by the City for the Third Suit is attached as **Exhibit F**.

21.     On February 10, 2004, the court entered a permanent injunction in the Second Suit (the "Second Suit Injunction") while also dismissing the Second Suit.

22.     On May 14, 2004, the court entered a permanent injunction in the Third Suit (the "Third Suit Injunction") while also dismissing the Third Suit.

23.     The Third Suit Injunction is attached as **Exhibit G**.

24.     The Second Suit Injunction and Third Suit Injunction required the defendant (i.e., the Property owner) to fully comply with all building code violations.

***Plaintiff Discovers the Injunctions.***

25.     In 2022, Plaintiff listed the Property for sale for $1,270,000 and received an offer.

26.     During the negotiations to sell the Property, Plaintiff learned about the injunctions.

27.     The deal did not close because of the injunctions against the Property.

28.     In 2024, Plaintiff again listed the property for sale at $1,400,000 and received an offer of $1,200,000.

29.     The potential buyer rescinded the offer after discovering the two injunctions and after Chicago Title refused to issue a hold harmless letter.

30.     The reduction in the value of the property as a result of the pending injunctions in the cases exceeds the amount of insurance of $682,000.

31.     Additionally, Plaintiff attempted to remove the injunctions and was told the work needed to satisfy the code violations was likely to exceed the amount of insurance of $682,000.

32.     In early 2025, Plaintiff submitted a claim against the Title Policy for the full amount of the policy.

33.     On March 3, 2025, Chicago Title rejected Plaintiff's claim. Attached as **Exhibit H** is Chicago Title's rejection letter.

34.     The parties exchanged several other communications, but Chicago Title refuses to budge from its position.

## COUNT I: BREACH OF CONTRACT

35.     Plaintiff incorporates its allegations in paragraphs 1-30.

36.     Plaintiff and Defendant had a valid contract whereby Plaintiff paid Defendant for the Title Policy, and Defendant was to indemnify Plaintiff for losses covered under the Title Policy.

37.     Plaintiff performed its obligations under the Title Policy.

38.     Defendant breached the Title Policy when it denied coverage for an item that falls squarely under the Title Policy.

39.     Defendant's breach caused Plaintiff at least $682,000.00 in damages.

WHEREFORE, Plaintiff Tri-Taylor Partners, LLC, asks this Court to enter judgment against Defendant Chicago Title Insurance Company in excess of $682,000, pre-judgment interest, and all other damages that the Court determines to be appropriate.

| **Dated:** July 29, 2025 | **Tri-Taylor Partners, LLC,** |
|---|---|
| William H. Jones<br>Paul M. King<br>**KING & JONES**<br>70 W. Madison Street, Suite 3970<br>Chicago, Illinois 60602<br>P: (312) 372-4142<br>wjones@kingjoneslaw.com<br>paul@kingjoneslaw.com | By:   /s/ William H. Jones<br>        One of its attorneys |